ROBERT PARKER, et al., plaintiffs in error, vs. JAMES M. CHAMBERS, defendant in error.

[1.] A witness may be twice examined by the same party, by commission, in the same case.

[2.] A witness cannot give his opinion or belief by assigning his reasons therefor, in cases where the opinion or belief is not *admissible* in evidence, without such reasons.

[3.] Habits of business of a man not admissible to prove, from his conduct, whether the sending of a slave with a married daughter was a gift or a loan: in this particular case, there being no evidence of other similar acts to other children.

[4.] One of several parties plaintiff may be stricken from the declaration.

[5.] Remainder-men not present at a purchase of property from tenant for life, are not bound to proceed against the purchaser, nor give him notice, until the accrual of their title.

[6.] When a legatee for life is in possession of the property bequeathed, at the

death of the testator, and the executor allows him to retain the possession, it is an assent to the legacy, both as to tenant for life and remainder-man.

[7.] A witness who testified to facts which took place when she was very young, after a lapse of fifty-four years, ought to be very consistent to entitle her evidence to full credence.

[8.] A will is admissible in evidence when both parties claim under the testator.

[9.] If, from the facts of the case, the suspicions of a party ought to have been excited, and he makes no enquiry, but proceeds to trial and takes the chances of a verdict, and the witness in the mean time dies, his objection ought not to be heard afterwards.

Trover, and New Trial, from Muscogee county. Before Judge Worrill, November Term, 1857.

This was an action of trover, brought by Robert Parker, and others, against James M. Chambers, for the recovery of certain negroes named in the declaration.

Upon the trial, the plaintiffs introduced *(inter alia)* the following testimony:

1st. The will of J. Christopher Pritchett, dated the 21st of October, 1807, by the 2d item of which the testator lent unto his daughter, Chloe Parker, during her natural life, one negro woman, Maria, and 4 children, namely, Jim, Dan, Mary, and Aggy, together with her future increase, and at her death, the said Maria and her increase were to be equally divided amongst the children of his said daughter Chloe, lawfully begotten of her body.

To the admission of this will the defendant objected. The Court overruled the objection, and admitted the same as evidence.

2d. The answers of Sally Sullivan to a set of interrogatories, to the following effect: That she thought the negroes in question were loaned to John Parker and Chloe Parker; that she was sent by her mother, at the direction of her father, to tell John and Chloe Parker to send the negroes home. Chloe Parker and herself were half-sisters. In answer to cross interrogatories, the witness stated that John and Chloe Parker were married nearly 54 years ago, and went to housekeeping

shortly after their marriage; that she thought the negroes were loaned to them shortly after they went to housekeeping; they remained in North Carolina 16 or 17 years after they came into possession of the negroes.

3d. The plaintiffs also read in evidence the answers of Sally Sullivan to a 2d set of interrogatories, to the following purport; That the reasons which induced her belief that the negroes in controversy were loaned by her father, Christopher Pritchett, to Chloe Parker were, that the negroes were permitted to go into the possession of John and Chloe Parket at their marriage, and that she was sent at the instance of her father to John Parker's house, to tell him or Chloe Parker to send the negroes home; that she told either John or Chloe Parker her father's request, and the negroes were sent home immediately, and after staying a short time at her father's, they were sent back again to John Parker's; that her father was a particular man, and required John Parker to send home the negroes every year to stay a short time, and then her father would send them back; never heard John Parker say that her father had a right to control the negroes, but she judged from his acts that he admitted it. Upon one occasion her father took the control by having the negro woman Maria whipped, and said he did it as he did not wish to pay costs, and to this John Parker did not object.

In answer to cross ·interrogatories the witness stated, that John Parker did not have possession of the negroes till some considerable time after the marriage.

To the admission of the answers to the 2d set of interrogatories, the defendant objected. The Court overruled the objection, and admitted the same in evidence.

During the progress of the trial, the plaintiffs moved to strike out the names of two of the plaintiffs, viz John and Susan Woods. The defendant objected. The Court allowed the names of those plaintiffs to be struck out.

4th. The plaintiffs then introduced as a witness, the defendant, James M. Chambers, who testified, that he had the

negroes (specifying them and their value,) in his possession, and claimed them as his own; that he obtained them from Archibald McCoy; Mary by purchase, Jim under the will of McCoy; all the rest are the descendants of Mary; got the negroes from McCoy about the year 1822; McCoy bought Jim and Mary from John Parker between 1818 and 1822; remembered when they were brought home after the purchase; the Parker family remained in the neighborhood many years after the purchase.

The jury found for the plaintiffs $13,500, to be discharged by the delivery of the negroes within thirty days; and the further sum of $7,500 for hire.

Whereupon, defendant moved for a new trial on the following grounds:

1st. Because the Court erred in refusing to suppress the depositions of Sally Sullivan on her second and last examination.

2d. Because the Court erred in admitting in evidence, (the defendant objecting thereto,) the *opinions* of Sally Sullivan, as disclosed in the brief of evidence.

3d. Because the Court erred in admitting in evidence, (the defendant objecting thereto,) proof by Sally Sullivan, of the general character of her father, as disclosed in the brief of evidence, and in admitting all that portion of the evidence of Sally Sullivan that was objected to by defendant on the trial.

4th. Because the Court erred in permitting the plaintiffs, in the progress of the trial, to strike out the names of John Woods and Susan Woods, and the cause to proceed in the name of the other plaintiffs.

5th. Because the Court erred in charging the jury, that if any of the children of Chloe Parker died before she died, that the right to the whole property, if any, vested in the surviving children of Chloe Parker upon her death.

6th. Because the Court erred in charging the jury, that unless the plaintiffs knew, at the time Chambers purchased the negroes, that they were remainder-men under the will, that

their subsequent silence or failure to make known their claim, though within their knowledge claimed in fee simple by Chambers, did not operate as a waiver of their right, nor were they thereby estopped from asserting the same.

7th. Because the Court erred in refusing to charge the jury, that they might infer knowledge on the part of the plaintiffs, or any one of them, from their conduct, and the circumstances shown by the evidence.

8th. Because there was no evidence submitted to the jury showing that the executors to the will of Pritchett, if any, ever assented to the legacy of Chloe Parker and her children.

9th. Because the jury found contrary to law and the charge of the Court.

10th. Because the verdict was without evidence, and contrary to the evidence.

11th. Because the verdict was contrary to the weight of evidence.

12th. Because the Court erred in charging the jury, that in order to enable them to find, that the plaintiffs or any one of them, had waived their title to the property in controversy, or were estopped from asserting it, they must be satisfied that such plaintiff was 21 years old at the time of said alleged waiver, or of said alleged estoppel, and had actual and personal knowledge of their right or claim to said property, as contained in said will of Christopher Pritchett ; and in charging them further on this point, that it devolved on the defendant to make the proof of these several facts to the satisfaction of the jury.

13th. Because the Court erred in admiting in evidence, the will of Christopher Pritchett, in the absence of evidence that the said testator had such claim, right or title to the negroes in controversy, as authorized the disposition of the same by will or otherwise.

14th. Because of newly discovered evidence since the trial, &c.

In support of the 14th ground, as mentioned, the defendant

made an affidavit to the effect, that since the trial he had discovered new and important evidence, set out in the affidavits of L. Fletcher and Spencer Sullivan, and that if he had known the same at the trial, he would have had those witnesses present in Court, and have moved to suppress the evidence of Sally Sullivan.

Spencer Sullivan's affidavit was to the effect, that he was present in the room when the answers of Sally Sullivan were taken, and that Christopher Parker and Robert Parker were present in the room during a part or the whole of the time.

Wm. L. Fletcher, by his affidavit, stated that he acted as one of the commissioners in taking the answers of Sally Sullivan; that Kitt Parker desired him to act as a commissioner in taking the answers of Sally Sullivan, and that he agreed to do so; that Kitt Parker introduced him to the witness; Kitt Parker and deponent both propounded questions to her, and interrogated her as "to the loan of the negroes;" that he proceeded to write down the answers of the witness, and at the same time Kitt Parker walked out upon the piazza; that while he was taking down the answers of witness, he saw Kitt Parker several times on the piazza, and the witness must have seen him; Kitt Parker was in such a position as to have been able to hear the testimony of the witness; that the witness had displayed in a wonderful degree, her powers of tedious narrative, and that he had, in taking down her evidence, "sifted the chaff from the wheat."

Upon hearing the rule nisi, the Court granted the new trial, and to this decision plaintiffs excepted.

JONES & JONES, for plaintiffs in error.

HOLT & HUTCHINS; HILL; DOUGHERTY; WELLBORN, JOHNSON & SLOAN, for defendant in error.

Judge BENNING having been formerly of counsel in this case, did not preside

*By the Court.*—McDonald, J. delivering the opinion.

The presiding Judge in the Court below granted a new trial in this cause, and his decision granting the new trial is assigned for error.

[1.] Mrs. Sally Sullivan, a witness for the plaintiffs, had answered two sets of interrogatories. The counsel for the defendant moved, at the trial, to rule out the depositions last taken. The Court overruled the motion, and the refusal of the Court to suppress that evidence, is made a ground for a new trial. There can be no legal objection to a second examination of a witness by commission, for the purpose of explaining evidence before given, or of testifying to additional facts.

[2.] The rule in respect to the admission in evidence of the opinion and belief of a witness has been relaxed in some cases, and such testimony has been admitted, provided the witness would assign the reasons for his opinion or belief. This is an unsafe extension of the rule. It ought to be confined to cases of the judgment of experts, and where opinion and belief are the only evidence, or the main evidence on which the issue to be tried depends. Experts in any science or trade may give their opinions on the trial of issues involving questions in respect to a particular science or trade. Subscribing witnesses to a will may testify as to their opinion of the sanity or insanity of the testator, and in similar cases witnesses may testify as to their opinions. But a witness must not give his opinion as to a fact, even though he give his reasons for his opinions. The opinion of the witness ought not to have the slightest influence upon the opinion of the jury, and yet, if the opinion goes before them, it will have an influence with them, imperceptible, perhaps, to themselves. The opinion is not relevant to the issue, if, upon its being submitted to the jury, it ought to have no influence on their finding; and if irrelevant, it is clear it ought not to be admitted as evidence. "A witness when under examination

*in chief*, must not depose as he *thinks*, or *persuades* himself to believe; he must swear from his *knowledge* of the fact." *McNally's Evidence*, 262. But even if the witness testifies from his *knowledge*, on the cross examination, he may be strictly enquired of, as to his means of knowing the fact sworn to by him. The case cited in the above authority illustrates the propriety of a searching cross examination. The witness swore positively that he knew a thing to be true. On being cross examined, he said he knew it because his father had said so. ‧ So a witness whose opinion is legal evidence, may be strictly examined by the other party as to the reasons upon which he formed that opinion, and perhaps this rule for the ascertainment of truth in such cases, has led, incautiously, in some instances, to admit opinions where reasons are assigned for them, when the opinions are not properly admissible with or without the reasons upon which they are founded.

The rule for admitting opinions ought to be "confined to cases in which from the very nature of the subject, facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge and judgment. *Jefferson Ins. Co. vs. Cothral*, 7 *Wendell's Rep.* 78.

The question in this case was whether the negroes who, at an early day, went into the possession of John Parker and his wife Chloe, were loaned or given to the daughter, Mrs. Parker, by her father, Christopher Pritchett. The witness, Sally Sullivan, testified in her first depositions, that she *thinks* the negroes were given or loaned. From her then present recollection she *thinks* they were loaned. She *thinks* the negroes were given or loaned shortly after they went to housekeeping. They went to housekeeping, she thinks, about four months after they were married. In her depositions last given, she reiterates that to the best of her recollection *and belief*, the negroes were loaned. Some time after the marriage, the negroes were *permitted* to go into the possession of

John and Chloe Parker, by her father.   She does not remember the precise time when the negroes entered into the possession of John Parker.   She knows he did not have possession of them until some considerable length of time had elapsed after his marriage.   It was at least a year, and may have been several.   In both sets of depositions the witness states the facts and circumstances upon which her belief that it was a loan was founded.   If a lawyer had been tendered as a witness to give his opinion whether upon these facts and circumstances the negroes had been given or loaned, he could not have been admitted, and why should the witness, whose opinions on that question were certainly less reliable and valuable, be received?   The jury were empannelled to find the facts, and the Court to pronounce the law, without the aid of the sworn opinions of the members of the bar, or of less capable witnesses.   We think that the opinion and belief of the witness, on that point, ought not to have been admitted.

[3.]  The habits of business of Christopher Pritchett were entitled to no consideration, in fixing the nature of the transaction in its origin, which was the subject of enquiry before the jury.   There was no evidence of gifts occurring to other children.

[4.]  This was an action of trover, and a party plaintiff may be stricken from the declaration in such case.   Even in England, where their statutes of amendment are not so liberal as ours, it has been allowed in actions sounding in contract.

The plaintiffs, if they recover, must recover under the will of Christopher Pritchett, and according to the construction of that will, those children only, of Chloe Parker, who survived her, are entitled to recover.

[5.]  The plaintiffs were not estopped by any implied waiver of right of property, or acquiescence in the purchase of the negroes by the defendant.   To bind them, the waiver or acquiescence must have been such as to have amounted to a fraud upon Chambers; such a fraud as, without which, he would not have purchased, or would have rescinded his trade

after his purchase. There is no evidence that any of the remainder-men were present when he purchased. Prudential considerations, if they were apprised of their rights, might well have restrained their action until their title accrued.

The defendant's purchase gave him the title of the tenant for life, and the remainder-men might have considered the property safe in his hands, until the accrual of their title.

[6.] The objection that no evidence was submitted to the jury to prove the assent of the executor to the legacy to Chloe Parker and her children, cannot-be sustained. The executor allowed the property to remain in the possession of the tenant for life, and that was an assent to the entire legacy. It was in her possession at the death of the testator, and remained there, with the assent of the executor, of course.

We do not perceive that the verdict of the jury conflicts with any legal principle, or with the charge of the Court.

It is alleged that the verdict of the jury was found without evidence, and contrary to evidence, and contrary to the weight of evidence.

[7.] The principal witness in this case, Mrs. Sullivan, testifies to facts and circumstances which must have transpired, according to her own evidence, about fifty-three or four years before the testimony was given, when she could not have been exceeding six or seven years of age, and she testified at a time when she had become aged herself, being at that time fifty-nine years old; and while we will not pretend to impute to a woman of her unquestionably good character, wilful misrepresentation, or even say that there may not be a memory capable of retaining facts and circumstances occurring at so tender an age, through a long life, yet, we will say, that the testimony of such a witness ought to be perfectly consistent throughout, to show that it proceeds from such a memory. Mrs. Sullivan answered two sets of interrogatories in this case. In the first set she says she thinks the negroes were given or loaned shortly after John and Chloe Parker

went to housekeeping. They went to housekeeping, she thinks, about four months after they were married. This is an important item in characterizing the transaction as a gift or a loan. In her second answers she deposes, that some time after the marriage, the negroes were permitted by her father to go into possession of John and Chloe Parker; she does not remember the precise time, but she knows Parker did not have possession of them until some considerable length of time had elapsed after his marriage. It was at least a year, and may have been several years. She testifies that Jeptha Parker, the oldest of the children of the fruits of the marriage of John and Chloe Parker, was, at the time of giving her evidence in 1854, about fifty-three years old. This would fix the period of the marriage in the year 1800, or as early as that year. John and Chloe Parker remained in North Carolina sixteen or seventeen years after they came into possession of the negroes. She has been informed that they moved to Putnam county, Georgia, in 1816, and supposes they brought the negroes with them. If this evidence be true, it would fix the loan or gift at about the time of, or shortly after the marriage, and corroborate the first depositions as to the time. We will remark, that while the evidence does not necessarily impeach itself, as to the facts testified to by the witness, it shows how closely the testimony of a witness ought to be scrutinized, who deposes, after so great a lapse of time, to transactions which took place when the witness was of so tender an age, that it would be most extraordinary for any human memory to retain them. We do not, however, say that on this ground alone the Court should grant a new trial, when all these facts and circumstances were before the jury for their judgments to draw their own conclusions.

There is no evidence in this case of any fact or circumstance, that the plaintiffs, or any of them, had practiced a fraud upon the defendant, or waived any right to proceed against him.

[8.] The Court committed no error in admitting in evidence the will of Christopher Pritchett. Both parties claimed under him. The negroes, from the testimony, went from him either as a gift or a loan. If the former, he had no right to will them. If the latter, he had; and the plaintiffs were entitled to recover.

[9.] The defendant moved to amend his motion for a new trial, by adding as a ground, newly discovered evidence. This evidence applied entirely to the taking of the testimony of Mrs. Sullivan, under circumstances of suspicion, supported by the affidavits of the commissioners. We do not hesitate to say that, under ordinary circumstances, we should sustain this ground. But the witness is dead. The testimony cannot be retaken. A set of interrogatories previously taken, in the same case, had been rejected on the ground presented as an objection to Mrs. Sullivan's. That might have excited apprehension or suspicion on the part of the defendant. If he had such strong reason for suspecting unfairness in taking the evidence, he ought to have made enquiry in regard to it before the trial. He was, perhaps, willing to risk a trial with the testimony. Suppose the defendant had known that the testimony was true, and did not object for that reason, after risking a trial, and the witness in the mean time dies, ought he to be allowed to object? It seems, that in a very short time after the trial, he procured this evidence, and it is not explained by what fortuitous circumstance he arrived at the knowledge of its existence. We must not be understood to hold, that if testimony be improperly taken and brought into Court, the death of the witness alone will entitle the party to the use of it. The case must raise no presumption against the other party.

We sustain the Court below, in granting the new trial on the ground on which we have shown that we think the rule should have been made absolute.

Judgment affirmed.