## LUQUIRE *v.* · LEE *et al.*

1. Though the premises were not described in the petition with sufficient fullness, yet the description was not so indefinite but that an amendment more particularly describing the premises was allowable.

2. A grantor in 1852 conveyed land by deed to a named trustee, his heirs and assigns. The habendum clause was: "To have and to hold the said tract or parcel of land to the said [trustee], his heirs and assigns forever, upon the special confidence and trust, nevertheless, for the sole and separate use of Nancy R. Lee and her children during the natural life of or widowhood of said Nancy R. Lee, and at her death or marriage this trust to cease and the property to be equally divided between the children of said Nancy R. Lee living at her death, share and share alike; with full power to said [trustee], with the consent of said Nancy and her husband, to sell said property and invest the proceeds in other property. To have and to hold the said tract or parcel of land with all and singular the rights, members, and appurtenances thereto appertaining, to the only proper use, benefit, and behoof of him, the said [trustee], upon the trust aforesaid and for the use aforesaid, [his] heirs, executors, administrators, and assigns, in fee simple." Mrs. Lee died in 1900 without remarriage. *Held:* (1) The estate created was a joint life-estate in Nancy R. Lee and her children during the life

of Mrs. Lee, with a fee-simple estate in remainder to the children of Nancy R. Lee who survived her; (2) that the trustee took the legal title to the life-estate only; and (3) that the power of sale conferred on the trustee was a special personal trust and one which did not pass to a successor.

3. The power of sale referred to in the preceding headnote expired with the death of the trustee. The judge of the superior court, upon petition of one of the beneficiaries at chambers, could appoint a successor to the deceased trustee, but was without jurisdiction over the legal estate in remainder so as to confer upon the new trustee the power of sale vested by the deed in the deceased trustee.

4. Coincidence of two independent estates presently held by one and the same person, or class of persons, is a necessary prerequisite to merger. There can be no merger of estates until such identity of person and of present interest in point of fact exists.

5. As the trustee did not represent the estate in remainder, and there was no merger of estates, the possession of the defendant did not become adverse to the remaindermen until the death of the life-tenant.

6. The estate in remainder by the terms of the deed was limited to the surviving children of Mrs. Lee. Heirs of a child who died before Mrs. Lee died took no interest in remainder under the deed.

7. The evidence was insufficient to support the equitable plea that the proceeds of the land improperly sold by the substituted trustee were invested in other land which was conveyed to him as trustee for his wife and children, and which had been partitioned between the plaintiffs.

Argued October 21, 1904,—Decided January 26, 1905.

Complaint for land. Before Judge Felton. Bibb superior court. April 27, 1904.

*Lane & Park,* for plaintiff in error. *M. G. Bayne,* contra.

EVANS, J. This was an action of ejectment brought against H. F. Luquire by Thomas Lee and Sarah Sheffield, who claimed title to the premises in dispute as remaindermen under a deed dated January 10, 1852, from Anna Jepson to Thomas P. Stubbs, trustee. This deed purported to convey to "Thomas P. Stubbs, his heirs and assigns," a certain described parcel of land in Bibb county, containing four acres. The habendum clause was: "To have and to hold the said tract or parcel of land to the said Thomas P. Stubbs, his heirs and assigns forever, upon the special confidence and trust, nevertheless, for the sole and separate use of Nancy R. Lee and her children during the natural life of or widowhood of said Nancy R. Lee; and at her death or marriage this trust to cease and the property to be equally divided between the children of said Nancy R. Lee living at her death, share and share alike; with full power to said Thomas P. Stubbs, with the

consent of said Nancy and her husband, to sell said property and invest the proceeds in other property. To have and to hold the said tract or parcel of land with all and singular the rights, members, and appurtenances thereto appertaining, to the only proper use, benefit, and behoof of him, the said Thomas P. Stubbs, upon the trust aforesaid and for the use aforesaid, [his] heirs, executors, administrators, and assigns, in fee simple." The deed also contained a general warranty of title "unto the said Thomas P. Stubbs, upon the use aforesaid, his heirs, executors, administrators, and assigns." Nancy R. Lee died in November, 1900. The plaintiffs' action was commenced in March, 1903. To this action the defendant interposed the following defenses: (1) Defendant and those under whom he claims have been in open, notorious, uninterrupted, exclusive, and adverse possession of the premises sought to be recovered, for a period of forty years, holding the same under deeds duly executed and recorded, and the defendant therefore has title by prescription. (2) On January 9, 1861, by an order passed by the judge of the superior court of the Macon circuit, William W. Lee, the husband of Nancy R. Lee, was, upon her petition, appointed trustee instead of Stubbs, the nominated trustee, who had previously died, said order of court conferring upon the substituted trustee "like powers, duties, and liabilities as were originally conferred on the said Thomas P. Stubbs in relation to the property mentioned in the deed of trust," which gave to him a power of sale for the purpose of reinvestment, with the consent of Nancy R. Lee and her husband. On April 3, 1863, William W. Lee, as trustee for his wife and children, and in execution of this power of sale, sold and conveyed the premises, with the written consent of Nancy R. Lee, to William T. Nelson, under whom the defendant claims as grantee. (3) The proceeds of this sale, amounting to $2,500, were invested by William W. Lee, as trustee, in another tract of land in Bibb county, purchased from and conveyed by one Durin Murray on July 23, 1863, the conveyance being made to William W. Lee as trustee for his wife and her children. The sale of the trust property and the investment of the proceeds in the tract of land last referred to "was with the full knowledge of the said Nancy R. Lee and her children," who immediately entered into possession of the land and held, owned, and enjoyed the same, receiving the full benefit thereof as tenants

in common, until January 27, 1888, when by the judgment of Bibb superior court, upon the petition of Thomas Lee, one of the plaintiffs in this suit, said tract of land was partitioned and each received his or her respective share in severalty. The plaintiffs, having thus received and enjoyed the full value and benefit of the property sold by their trustee, William W. Lee, and having in no way accounted or offered to account for the same, are now estopped from claiming the property so sold.

A trial of the case was had on the merits. After the plaintiffs announced closed, the defendant made a motion for a nonsuit. The plaintiffs thereupon amended their petition by more fully describing the premises sued for, and the court overruled the motion to nonsuit. Evidence in behalf of the defendant was then submitted, and the plaintiffs introduced testimony in rebuttal. After the conclusion of both sides had been announced, the court was asked by counsel for the plaintiffs to direct a verdict in their favor, which the court, after hearing argument, accordingly did. Exception is taken by the defendant below to the overruling of his motion to nonsuit, to the allowance of the amendment to plaintiffs' petition, and to the judgment of the court directing a verdict against him. The questions thus presented for our determination will be briefly stated and disposed of in the discussion of the case which follows.

1. As originally framed, the plaintiffs' petition described the premises sought to be recovered as a "tract or parcel of land lying and being in the county of Bibb, and in the Godfrey district, in the suburbs of the city of Macon, and more particularly described as follows: Fronting on the New Houston road on southwest, on north by lands claimed by Jane Jones, being 1/4 acre, more or less." By way of amendment, the plaintiffs alleged that this one-fourth acre was "in the shape of a triangle, fronting on New Houston road on the southwest and on the opposite side by street name of which is unknown to plaintiffs; that said triangle is bounded on the north by lot now claimed by one Berry Hall, on which he now resides, and being a part of original lot No. 46, described in the deed from Anna Jepson to Thos. P. Stubbs, trustee, recorded in Book 'L,' page 253, Clerk's office Bibb superior court." The defendant objected to the allowance of the amendment, on the ground that "the original petition did not con-

tain enough to amend by, and that the amendment offered set up a new and distinct cause of action, it appearing from the amendment that different property from that attempted to be described in the original petition was sought to be recovered." In support of this position, counsel for the plaintiff in error cite the cases of *Turner* v. *Rives*, 75 *Ga.* 606, and *Harwell* v. *Foster*, 97 *Ga.* 265, in which this court pointed out the necessity of describing premises sought to be recovered with sufficient fullness and particularity to authorize a decree being based upon the pleadings. In both of these cases, however, the right of a plaintiff to amend by perfecting an indefinite description of the property sued for was distinctly recognized. In the present case there was certainly enough in the petition to amend by, and the amendment did not, as claimed, substitute for the imperfect description of the property for which the action was originally brought a description of other and different property.

2. The estate created by the deed from Jepson to Stubbs, trustee, was a joint life-estate in Mrs. Lee and her children during the life of Mrs. Lee, with a fee-simple estate in remainder to the children of Mrs. Lee who survived her. *Franke* v. *Berkner*, 67 *Ga.* 264; *East Rome Town Co.* v. *Cothran*, 81 *Ga.* 359. There are many cases holding that a conveyance to one in trust for another for life and, on the death of the life-tenant, to her children in remainder, clothes the trustee with the legal title to the life-estate, but not to the estate in remainder. *Fleming* v. *Hughes,* 99 *Ga.* 444; *Rogers* v. *Pace*, 75 *Ga.* 436; *Carswell* v. *Lovett*, 80 *Ga.* 36; *Bull* v. *Walker*, 71 *Ga.* 195; *Allen* v. *Hughes*, 106 *Ga.* 775; *Brantley* v. *Porter*, 111 *Ga.* 886; *Overstreet* v. *Sullivan*, 113 *Ga.* 891; *Tillman* v. *Banks*, 116 *Ga.* 250. The vesting of a power in the trustee to dispose of both the equitable estate held by him in trust and the legal estate in remainder does not confer on the trustee the title to the estate in remainder. It is competent for a grantor to confer upon a trustee of an equitable estate a power of sale over the entire fee, though the trustee may have no interest whatever in the legal estate in remainder. Civil Code, § 3171; *Headen* v. *Quillian*, 92 *Ga.* 220; *Heath* v. *Miller,* 117 *Ga.* 854; *Tillman* v. *Banks*, supra. The remainder estate is none the less a legal estate while the trust as to the life-estate is executory, but with the limitation that the trustee may, in the

exercise of the power of sale, defeat it in the particular property. The property purchased with the proceeds of the sale becomes impressed not only with the trust declared in the original deed, but the remainder estate in the substituted property does not lose its character as a legal estate. The power of sale over the entire fee, therefore, does not convert the legal estate in remainder into an equitable estate, nor clothe the trustee with title thereto. The power of sale may be personal to the trustee or it may attach to the office of trustee. If the power is personal to the trustee, it can be exercised by him only; but if the power is incident to the office of trustee, it may be executed by a successor. Generally, a "power of sale, whether a common-law or equitable power, or taking effect under the statute of uses, can be exercised only by the persons to whom it is expressly given." 2 Perry on Trusts, § 499. In determining the limitation of the power relatively to its exercise by the nominated trustee or a successor, the whole deed should be looked to in order to ascertain the purpose of the grantor. If the deed had conferred upon the trustee and his *successors* the right to execute the power, clearly the power would have pertained to the office of trustee, and could have been exercised by the trustee for the time being. An imperative power to sell, such as a direction to sell property in any event, would impose a duty to sell on any one filling the office of trustee, and could be exercised by a substituted trustee. A discretionary power to sell can be exercised only by the trustee upon whom it is conferred. "Wherever an authority is given to trustees, which is either not compulsory upon them to exercise at all, or, if compulsory, the time or manner or extent of its execution is left to be determined by the trustees, that is obviously a discretionary power, though the extent and nature of the discretion may vary in each case." Hill on Trustees, 485. In the deed under consideration the trustee could not sell without the consent of Nancy R. Lee and her husband; neither could Nancy R. Lee and her husband sell without Stubbs, the trustee, joining in the conveyance. The sale and reinvestment contemplated the affirmative assent of the trustee, to become effectual. The grantor, if she wished to deprive the trustee of any discretion as to the sale or reinvestment, could very easily have made it his duty to sell and reinvest at the will of Mr. and Mrs. Lee, thus constituting the trustee the mere conduit

of passing the legal title. The grantor's intention can not be supplied by suggestions or matters extrinsic of her written declarations; and by her solemn deed she invested the trustee with full power to sell with the consent of Mr. and Mrs. Lee — a power which the trustee necessarily had a discretion in executing.

The conclusion is irresistible that the power in the deed was not incident to the office of trustee, but personal to the trustee. Even though the writer had been in doubt as to the correctness of his conclusion, this court, in *Simmons* v. *McKinlock*, 98 *Ga.* 738, decided: "Where a deed conveyed land to a named person in trust for a married woman for life, and at her death to her children then living, 'with power in said trustee, by and with the written consent of the [life-tenant], to sell said property and reinvest the same in other property, subject to the same limitations and restrictions,' the power thus created conferred upon the trustee a special personal trust, and was therefore one which did not pass to a successor." In my search of the authorities where sales by a substituted trustee were upheld, the deed or will either constituted the power of sale an incident to the office of trustee or made provision for the exercise of the power of sale by a successor of the original trustee. *Freeman* v. *Prendergast,* 94 *Ga.* 369; *Henderson* v. *Williams,* 97 *Ga.* 709; *Bailie* v. *Carolina Assn.,* 100 *Ga.* 20; *Heath* v. *Miller,* 117 *Ga.* 854. In *Freeman* v. *Prendergast,* the power of sale was construed to belong to the office of trustee, and not to be personal to the trustee. This construction was based on the following considerations: The power of sale was not unilateral, but matter of express covenant; the power was not personal, because it extended to both trustees " or to the survivor of them, or the executors or administrators of such survivor;" the power was coupled with an interest, the trustee being clothed with the legal title and estate in the trust property, which was the entire fee, and the power of sale was imperative as to the payment of certain specified debts, and was to be executed irrespective of whether the life-tenant were living or dead. None of the characteristics pointed out by the learned judge in the opinion in that case as a reason for holding the power of sale appurtenant to the office of trustee are included in the deed in the case at bar. In the deed under discussion the power was unilateral, and was not a matter of express covenant between the parties. The power

was personal, as already pointed out in this opinion, and the exercise of the power was limited to Stubbs, without the addition of the words "executors or administrators" or any words of similar character or import.    The power of sale was not coupled with an interest extending to the whole estate, because by the express terms of the deed the trust did not extend to the remainder estate, the language of the deed being, "at her [Mrs. Lee's] death or marriage this trust to cease, and the property to be equally divided between said children of said Nancy R. Lee living at her death, share and share alike."    The power of sale did not put an imperative duty on the trustee to sell, as was the case in the instrument involved in *Freeman* v. *Prendergast.*    That case is therefore clearly distinguishable from the case now under consideration.    In the other cases cited, the instruments giving the power authorized in express terms the exercise of the power of sale by a "successor" of the nominated trustees.

3. If the power of sale was personal to Stubbs, the nominated trustee, then it expired with his death.    What effect, therefore, should be given the order of the judge of the superior court, appointing a new trustee and investing him with the powers conferred on the original trustee by the deed ?    In the first place, the application for the order was made by Mrs. Lee.    The petition recited that it was her petition, and it was signed by her.    The only reference to her children was by way of recital that they took an interest with her under the deed from Jepson to Stubbs, trustee.    The prayer was for the appointment of a trustee to fill the duties of the trust to the same extent as the original trustee might or could do.    The order based on this petition did not allude to the children by name or as a class, but merely named a trustee and gave him the same powers possessed by the trustee in whose stead he was appointed.    The chancellor could, at chambers, upon the petition of the beneficiaries who had arrived at discretion, appoint a trustee.    Civil Code, §§ 3164, 3165.    Before the code, it was not necessary to serve the minors to bind their equitable interests, and it was discretionary with the chancellor to require them to be made formal parties.    *Freeman* v. *Prendergast,* supra.    So far as the equitable interest of Mrs. Lee extended, the trustee appointed under this order of court represented that interest.    And, perhaps, the interest of the minor

children to share with their mother the rents and profits of the land, during her life, might also be included in the equitable estate represented by the substituted trustee. The chancellor had plenary power in vacation over the appointment of the trustee, and could authorize the sale of the equitable estate which the trustee represented. As we have pointed out, the power of sale conferred on Stubbs, the nominated trustee, was a personal one and expired at his death. Therefore the trustee appointed in his stead would derive his power of sale, not from the deed, but from the order of court. The order of court was tantamount to a decree of sale under the same limitations as contained in the deed. It affected to dispose of both the equitable estate of the life-tenants and the legal estate in remainder. The chancellor had no power, at chambers, to order a sale of the legal estate of the remaindermen for the purpose of reinvestment. *Pughsley* v. *Pughsley*, 75 *Ga.* 95; *Rogers* v. *Pace*, Id. 436; *Taylor* v. *Kemp*, 86 *Ga.* 185; *McDonald* v. *McCall*, 91 *Ga.* 305; *Fleming* v. *Hughes*, 99 *Ga.* 450; *Richards* v. *Ry. Co.*, 106 *Ga.* 614. In the last-cited case, while it was held that in *term* time the superior court could authorize a trustee to sell for reinvestment both the equitable and legal estates, where all parties at interest were represented, yet it was recognized that this power did not exist in vacation. The fact that the chancellor had the power to order the sale of the trust property would not give him power to order the sale of the legal estate, although the remaindermen had a joint interest with their mother in the estate created for her life. The order of the chancellor was therefore limited to the equitable estate, and the substituted trustee did not represent the legal estate, nor had he any power under that order or otherwise to sell the estate in remainder. The purchaser from him acquired no interest in the remainder estate, but only title to the equitable estate represented by the trustee.

4. Another question presented for determination is whether, between the date of the trust deed and the death of Mrs. Lee, there was any merger of the interest of her children in the life-estate into the remainder interest which they took under that deed. A merger of estates occurs when "two estates in the same property unite in the same person in his individual capacity, the less estate [being] merged in the greater." Civil Code, § 3106.

Or where, as was held in the case of *Lowe* v. *Webb*, 85 *Ga.* 731, two or more persons having, as tenants in common, a life-estate in realty, acquire in common the absolute fee thereto.   See also *Stringfellow* v. *Stringfellow*, 112 *Ga.* 494, 497; *Bardwell* v. *Edwards*, 117 *Ga.* 825.   It is doubtless true that where the entire interest in a life-estate is held by a class of persons, under a deed or will which does not provide for survivorship, and subsequently the estate in remainder is vested in all of the members of this class, as tenants in common, by inheritance or otherwise, the life-estate becomes merged, by operation of law, into the greater estate which they acquire.   But there was not, for at least three good reasons, any merger of the two estates created by the trust deed now under consideration.   (1) The children of Mrs. Lee did not take the entire interest in the life-estate thereby created, but held it, together with her, as long as she continued in its enjoyment, and, after she parted with her interest therein by deed, owned it in common with her grantee.   Accordingly, because of the ownership of a part of the life-estate by a third person, the life-estate could not, at any time prior to Mrs. Lee's death, merge into the estate in remainder created by the trust deed in favor of her children.   In other words, the class of persons entitled to enjoy the life-estate was not, in personnel, the same as the class of persons in which the estate in remainder vested.   No merger could take place without, on the one hand, ignoring and depriving Mrs. Lee (or her grantee) of the interest in the life-estate conferred upon her, or, on the other hand, sacrificing the interest of her children in the life-estate by limiting their enjoyment of the property to their estate in remainder and postponing such enjoyment till her death.   (2) To declare such a merger would defeat the object and purpose of the donor; and it is well settled that this may not be done where the donor has, by one and the same instrument, conferred upon different persons, respectively, separate and exclusive interests or estates in the property conveyed.   See 1 Wash. Real Prop. (6th ed.) § 368.   Indeed, the doctrine of merger of estates is designed primarily for the benefit of one who acquires an interest in property greater than that he possessed in the first instance, and will not be held to apply, against his will, to his disadvantage.   *Knowles* v. *Lawton*, 18 *Ga.* 476; Cole v. Grigsby (Tex.), 35 S. W. 690, and authorities cited.   (3) The

children having an interest in the life-estate were not necessarily those who might eventually enjoy the estate in remainder. By the very terms of the trust deed, none of the children of Mrs. Lee could take as remaindermen in the event she survived all of them and died childless. Those who survived her, and those only, were to enjoy the estate in remainder. Who they might be could not, with any degree of certainty, be ascertained before the termination of the life-estate; and so long as the uncertainty existed there could be no merger of the life-estate into the estate in remainder. The doctrine of merger of estates rests upon actualities, not upon mere possibilities. Coincidence of two independent estates, presently held by one and the same person or class of persons, is a necessary prerequisite to merger. No merger can take place until such identity of person and of present interest in point of fact exists. For instances in point, where it has been held that no merger took place despite the fact that one and the same person had different interests in property of which he was only part owner, see Asch v. Asch, 18 Abb. N. Cas. 82 ; Bomar v. Mullins, 4 Rich. Eq. 80 ; Johnson v. Johnson. 7 Allen, 196, 83 Am. Dec. 576 ; Cole v. Grigsby, supra.

5. If the trustee did not represent the remaindermen, or if there was no merger of estates, then the defendant did not acquire a prescriptive title as against the remaindermen. The suit was filed very soon after the death of the life-tenant. The right of the remaindermen to sue arose upon the death of their mother. The possession of the defendant was not adverse to them until they had their cause of action.

6. Only the children of Nancy R. Lee who were in life at her death took the remainder estate. It appears that at the date of the deed Mrs. Lee had three children, and that subsequently one of these died before Mrs. Lee died, leaving heirs. The plaintiffs were the surviving children. The contention of the plaintiff in error is that even if the plaintiffs below were entitled to recover, they could recover only a two-thirds interest, whereas the verdict was for the entire land. The heirs of the child who died prior to the death of Mrs. Lee had no interest in the remainder estate. The unambiguous terms of the trust deed expressly limited the enjoyment of the estate in remainder to surviving children.

7. The evidence upon which the defendant relied as showing

that the proceeds of the sale of the trust property went into the lands conveyed by Durin Murray to William W. Lee, as trustee for his wife and children, was not sufficient to support anything more than a bare conjecture that this was in point of fact true. The plaintiffs introduced testimony tending to show that the proceeds realized from that sale were not so invested, but that payment for the trust property was made by the purchaser in Confederate currency, which went into the hands of Mrs. Lee and was kept by her until, shortly after the sale, the house in which she lived was destroyed by fire, together with about $2,000, some $300 of this amount being in coin and the rest in currency. It further appeared that she and her husband had loaned to a neighbor $750 in Confederate currency, some six or eight months before the close of the war, and that this debt had never been paid. The plaintiffs offered themselves as witnesses, and each denied knowing anything about the investment of the trust funds in the land purchased from Murray. One of the defendant's witnesses was permitted to swear, apparently without objection, that some two or three years before William W. Lee died, which was somewhere along about the year 1886, witness had a conversation with him regarding his purchase of the Murray place, and he had said he "had sold the land up this way and bought the place he lived on ; he sold this five acres in South Macon and purchased that place he lived on;" and, during the course of the same conversation, had further said that "Tom [one of the plaintiffs] had made some threats to get up a lawsuit about it, and he did not think it was right, that he already had the worth of it." It is evident, from other facts appearing in the record, that the land "in South Macon" to which William W. Lee referred in this conversation was the tract which he had sold as trustee under the order of court hereinbefore mentioned. But the testimony of the witness with regard to this conversation was hearsay, pure and simple, and in no way strengthened the defendant's case. "Since ordinary hearsay testimony is not only inadmissible but wholly without probative value, its introduction without objection does not give it any weight or force whatever in establishing a fact." *Eastlick* v. *Ry. Co.*, 116 *Ga.* 48. The question to be determined is whether, ignoring this mere hearsay, there was sufficient competent evidence to warrant a jury in finding in

favor of the defendant.   *Suttles* v. *Sewell,* 117 *Ga.* 214, 216.
We think there was not.    Certainly the equitable defense set up
by the defendant was meritorious, if founded on fact.    *Taylor*
v. *James,* 109 *Ga.* 328, 335, and cit.   The burden of establishing
this defense rested upon him.    He signally failed to show that
either of the plaintiffs had, expressly or impliedly, ratified the
trustee's sale and reinvestment, or that for any reason either of
them was estopped from asserting title to the premises in con-
troversy.    The defendant also failed to successfully trace the trust
funds into the Murray place.    Moreover, even were the evidence
such as to warrant a jury in finding that the proceeds of the trust
property were invested by the trustee in that tract of land, they
were not furnished by the defendant with sufficient data to enable
them to find what amount in money he was entitled to receive
from the plaintiffs, or either of them, as a condition precedent to
their obtaining a decree for the land which he had purchased in
good faith.    It was necessary that the defendant should furnish
this data, for the plaintiffs could be charged with such benefits
only as they derived out of the purchase of the Murray place.
*Bazemore* v. *Davis,* 55 *Ga.* 505 (11).   The tract of land conveyed
by the Jepson trust deed and sold by Lee, as trustee, to William
T. Nelson, the defendant's predecessor in title, contained five acres,
and of this tract the defendant had purchased but a quarter of
an acre, the balance of the tract being claimed by other persons
not parties to the case.    It was therefore incumbent on the de-
fendant to furthermore show what pro rata share of such ben-
efits chargeable to the plaintiffs he was entitled to call on them
to account for before they could recover the quarter of an acre
he had bought.    Ibid. 506 (12).   No attempt appears to have
been made by the defendant to meet these requirements as to
proof; and, so far as this branch of the case is concerned, the
court was clearly right in declining to submit the case to a jury.
The other issues raised on the trial involved only questions of
law ; so a verdict in favor of the plaintiffs was inevitable, in the
view we take of the law governing the case.

*Judgment affirmed.    All the Justices concur.*