SMITH *et al.* *v.* McWHORTER, executrix, *et al.*

1. In 1869 Sarah Finch conveyed to "John F. Smith for the use, benefit, and advantage, in trust for said Mary A. Smith, for life, exempt from the marital rights of said John F. Smith or any future husband, for her sole and separate use, and on her decease to such child or children, or representatives of child or children, born of the said John F. Smith and the said Mary A. Smith, as she may leave in life," certain described land, " to have and to hold the said tract or parcel of land to him, the said John F. Smith, in trust for the said Mary A. Smith and her children, as above specified, forever, free from the debts, liabilities, obligations, or control of her present or any future husband of the said Mary A. Smith." The trust created by this deed was for the life-estate only, and, under the operation of the married woman's act of 1866, became executed immediately upon the delivery of the deed, and the legal title to the life-estate vested in the life-tenant. The remainder created was a legal remainder.

2. The estate in remainder being a legal estate, the trustee did not represent the remaindermen; and the judge of the superior court had no jurisdiction, on the application of the trustee, in chambers, to authorize the sale of the interest of the remaindermen.

3. As the trustee did not represent the remaindermen, their right of action did not accrue until the death of the life-tenant, and the possession of the defendants was not adverse to the plaintiffs until they had their cause of action.

4. Mere knowledge of the illegal decretal order and of the sale thereunder will not estop the remaindermen from asserting their title, after the death of the life-tenant, against the grantees of the purchaser under the void order. Nor can the remaindermen be said to have ratified such void sale, unless, with knowledge of the facts, something was done by them to indicate their adoption and approval of the sale under the decree.

Argued April 13,— Decided June 15, 1905.

Complaint for land.    Before Judge Holden.    Oglethorpe superior court.    October 18, 1904.

On September 2, 1869, Sarah Finch made to John F. Smith a deed to certain land in Oglethorpe county known as the "William Finch tract," the consideration expressed in the instrument being the natural love and affection which the grantor had for his wife, Mary A. Smith, and their children, as well as the sum of five dollars in hand paid by John F. Smith. By this conveyance Sarah Finch granted the premises described "unto the said John F. Smith, for the use, benefit, and advantage, in trust for said Mary A. Smith, for life, exempt from the marital rights of said John F. Smith or any future husband, . . for her sole and separate use, and on her decease to such child or children, or representative of

child or children, born of the said John F. Smith and the said
Mary A. Smith, as she may leave in life. . . To have and to
hold the said tract or parcel of land to him, the said John F.
Smith, in trust for the said Mary A. Smith and her children, as
above specified, forever, free from the debts, liabilities, obligations,
or control of her present or any future husband of the said Mary
A. Smith." On November 22, 1875, John F. Smith, as "trustee
for his wife, Mary A. Smith, and children," presented a petition
to the judge of the Northern circuit, praying leave to sell the lands
of the trust estate and to reinvest the proceeds of the sale in a
tract of land belonging to petitioner, which was represented to be
a more suitable place to rear his children, and was then occupied
by himself and family as a residence.   Upon the following day,
which was in vacation, the chancellor passed an order granting
the prayer of the petition, on condition that a guardian ad litem
thereby appointed to represent the minor children should assent
in writing to such sale and reinvestment.   The assent of the guard-
ian ad litem was procured, and the trust property was brought to
sale.   J. H. McWhorter became the purchaser at the sale, and on
February 24, 1876, John F. Smith, as trustee for his wife and
children, made to him a deed which recited, as authority for its
execution, the above-mentioned order of the chancellor.   On
December 20, 1876, J. H. McWhorter conveyed the property to
Joseph McWhorter, who by will devised the land to certain per-
sons therein named.   At the time the trust deed was executed,
Mary A. Smith was over twenty-one years of age.   She died
December 27, 1900, leaving five children surviving her. These
children, on March 31, 1902, after the death of their father on
February 24, 1901, brought an action to recover the land de-
scribed in the trust deed, against J. H. McWhorter, the purcha-
ser at the sale by the trustee, and certain persons claiming under
him.   The defendants in their answer set up the claim that the
deed of trust from Sarah Finch to John F. Smith clothed him
with the fee-simple title to the property thereby conveyed; that
the order of the chancellor conferred upon him power to sell the
property for the purposes of reinvestment; and that J. H. Mc-
Whorter acquired the legal title thereto as purchaser at the sale
made by Smith, trustee.   The defendants set up the further
defense that if such sale was not valid and binding in the first

instance, it was subsequently ratified by the plaintiffs, who for more than twenty years enjoyed the proceeds of the sale, with full knowledge of the facts. To the answer filed by the defendants the plaintiffs demurred both generally and specially. Thereupon the defendants amended their answer by alleging, in support of their contention that the sale had been ratified by the plaintiffs, the following facts: Plaintiffs had actual knowledge of the occupancy by Joseph McWhorter of the land sued for, continuously from November 20, 1876, up to the time of bringing suit, plaintiffs having been born and having lived on the Finch tract and having removed therefrom at the time of the sale thereof to J. H. McWhorter on February 24, 1876, and having from time to time thereafter been the tenants of Joseph McWhorter and having seen him make improvements upon it, and also having heard their parents say he was in possession in pursuance of the sale by their father as trustee. While plaintiffs remained members of the family of their father they were supported from the tract of land which he had purchased with the proceeds of that sale, and derived a support therefrom after the death of their mother and up to the time of his death. They knew the property so occupied and enjoyed by them was purchased with funds arising from the sale by the trustee; yet they did not assert an adverse claim to the premises sued for or notify McWhorter that they had any interest therein, and, with full knowledge of all the facts, remained in possession of the substituted tract of land after the death of the life-tenant. The plaintiffs demurred to the answer as amended, but their demurrer was overruled. A trial was had on the merits and resulted in the direction of a verdict for the defendants. The plaintiffs except to various rulings made during the trial, as well as to the overruling of their demurrer and the direction of the verdict.

*Samuel H. Sibley,* for plaintiffs.

*W. M. Howard* and *Hamilton McWhorter,* for defendants.

EVANS, J. (After stating the facts.) 1. The rights of the parties in the present litigation very largely, if not entirely, depend on the construction of the deed from Sarah Finch to John F. Smith, trustee, executed on the 2d day of September, 1869. A copy of this deed appears in the statement of facts. At the

time the deed was made, Mary A. Smith, the life-tenant, was an adult. The practical question is, whether, by the terms of this deed, a trust estate was created for the life-tenant and the remaindermen, executory at least until the death of the life-tenant; or was the trust limited to the life-estate and executed by the "married woman's act" immediately on the signing and delivery of the trust deed? It is a general rule, upon which "the authorities all concur, that in creating a trust estate, the trustee, without words of inheritance — and in the case of wills with them,— takes only such quantity of estate as is necessary for the purposes of the trust." *East Rome Town Co.* v. *Cothran,* 81 *Ga.* 361. If there is no need of a trustee to protect and preserve the interests of those who are to take by way of remainder, the trust will be limited to the life-estate. As was pointed out in *Fleming* v. *Hughes,* 99 *Ga.* 448, before the code a trust was necessary to preserve a contingent remainder, because such a remainder might be defeated by the premature termination of the precedent estate; but since the code, as no particular estate is necessary to sustain a remainder, the defeat of the particular estate for any cause does not destroy the remainder. It is not, therefore, necessary to interpose a remainder to trustees to preserve a contingent remainder. Hence it has often been held, that a conveyance to a trustee in trust for one for life, and, after the death of the life-tenant, to such children as the life-tenant may leave living at the time of her death, created a trust only for the life-estate, and that the remainder was a legal and not an equitable estate. *Tillman* v. *Banks,* 116 *Ga.* 250, wherein the prior cases on this subject are collated. See, also, *Luquire* v. *Lee,* 121 *Ga.* 624; *Stiles* v. *Cummings,* 122 *Ga.* 635. A grantor may convey the title to the remainder estate to the trustee; and the trustee, in such cases, will hold the legal title to the remainder estate until the trust becomes executed. *Askew* v. *Patterson,* 53 *Ga.* 209; *Ford* v. *Cook,* 73 *Ga.* 215; *Knorr* v. *Raymond,* 73 *Ga.* 749; *Cushman* v. *Coleman,* 92 *Ga.* 772; *Moore* v. *Sinnott,* 117 *Ga.* 1010; s. c. 113 *Ga.* 908. Likewise a grantor, while not expressly conveying to the trustee the title to the remainder estate, may create a duty in the trustee with respect to the estate in remainder, so as to convert the legal estate into an equitable one and make the trust executory until the duty may be performed under the terms

of the trust.　Thus, if the instrument creating the trust imposes upon the trustee the duty of making division among indeterminate remaindermen after the termination of a precedent life-estate, the trust is executory pending the existence of the life-estate. *Riggins* v. *Adair*, 105 *Ga.* 727; *Cushman* v. *Coleman*, 92 *Ga.* 772. .Or, if the trustee is expressly empowered to act and manage the property for the life-tenant and for the infant or contingent remaindermen, the trust is executory until the life-estate is determined.　*Johnson* v. *Cook*, 122 *Ga.* 524.　Generally where the title is conveyed to a trustee in trust for a life-tenant, with a remainder over, where no express trust for those who are to take in remainder is created nor any duty imposed on the trustee with respect to the estate in remainder, such remainder is a.legal and not an equitable estate.　The mere fact that the remainder estate may be contingent does not necessarily convert it into an equitable estate.　*Mitchell* v. *Turner*, 117 *Ga.* 959.　The contingency of the remainder, however, is always an important factor in construing the character of the estate passing to the trustee, in the effort to arrive at the true intent of the grantor.

The cases of *Thomas* v. *Crawford*, 57 *Ga.* 211, and *Jennings* v. *Coleman*, 59 *Ga.* 718, are distinguishable from the case at bar.　In both cases the issue presented for determination arose upon the levy of a fi. fa. upon the interest of the tenant for life, and a claim by the trustee.　In the first case the bequest of the property was to the trustee, who was to pay over the rents, issues, and profits annually to the person who it was contended owned a life-estate.　By the will the corpus of the estate was expressly devised to the trustee; he was to have possession of the land, was to manage it and pay the income annually to Howard, and upon Howard's death the trustee was to deliver possession to those entitled in remainder.　The phraseology of the will clearly indicated that the testator intended that the trustee should represent the whole estate during the life of Mr. Howard, and that the trust was to be executory so long as he lived. In the latter case the property conveyed by the deed before the court was subjected to the same trusts, uses, and conditions as were contained in the will of the father-in-law of the grantor; and it was held that the deed, interpreted and construed with the will, created an executory trust.　This case is controlled by its

own special facts, and the conclusion reached was the result of an attempt to give effect to the two instruments so as to effectuate the grantor's interest. Discarding all technicalities, the plain and manifest intent of the grantor in the deed before us was to create a trust for the life-estate only. No express trust was created for the remaindermen; no powers were conferred on the trustee, and no duty imposed for the benefit and protection of the remaindermen. The evident purpose of the grantor in conveying the title to the life-estate to a trustee was to protect the life-tenant against the marital rights of the husband. This deed was made shortly after the enactment of the "married woman's act of 1866," and at that time the emancipation of a married woman's property was hardly appreciated by the public. As to her separate estate the wife was then a feme sole, and the husband's marital right of reducing to possession the wife's property and in this way acquiring the title thereto no longer existed. Only the naked legal title to the life-estate passed to the trustee; the estate in remainder was a purely legal estate. As no trust at the date of this deed could be created for an adult married woman, the trust was executed on the delivery of the deed, and the complete title to the life-estate vested in Mary A. Smith. The trustee represented neither life-tenant nor remaindermen, and having no duty to perform, the trust was executed. *Tillman* v. *Banks*, supra.

2. The estate in remainder being a legal estate, the trustee did not represent the remaindermen, and the judge of the superior court had no jurisdiction in chambers, on the application of the trustee, to authorize the sale of the interest of the remaindermen. *Milledge* v. *Bryan*, 49 *Ga.* 397; *Knapp* v. *Harris*, 60 *Ga.* 398; *Rogers* v. *Pace*, 75 *Ga.* 436; *Pughsley* v. *Pughsley*, Id. 95; *Taylor* v. *Kemp*, 86 *Ga.* 181; *Fleming* v. *Hughes*, 99 *Ga.* 444. The order of sale being without authority of law, the sale thereunder was necessarily void.

3. This suit was instituted within two years of the death of Mrs. Smith, the life-tenant. As the trustee did not represent the remaindermen, their right of action did not accrue until the death of the life-tenant; and the possession of the defendants was not adverse to the plaintiffs until they had their cause of action. *Luquire* v. *Lee*, 121 *Ga.* 634.

4. The defendants further pleaded that if the title did not vest in the trustee by virtue of the deed from Finch to Smith, trustee, but vested in the life-tenant and the remaindermen, they and their predecessors in title had full and complete possession of the premises since the date of the deed from Smith, trustee, to J. H. McWhorter (February 24, 1876), with the knowledge and consent of the remaindermen, who after their maturity enjoyed the proceeds of the sale. We have already pointed out that the trustee was not invested with the title to the land under the Sarah Finch deed. Under this deed Mary A. Smith took a life-estate and the plaintiffs the estate in remainder. The trustee's sale was absolutely void. Whether the life-tenant was estopped from denying the legality of that sale or had ratified it does not enter into the present controversy. She died without having disaffirmed it, and the litigation is between the grantees of the purchaser at that sale and the remaindermen, whose estate did not come into possession until after the life-tenant's death. The rule in such cases is that remaindermen who do not participate in the sale by the life-tenant are not bound to proceed against the purchaser or give him notice until the accrual of their title. *Parker* v. *Chambers*, 24 *Ga.* 518. Before an estoppel can be urged against the remaindermen, they must have done some act whereby they derived a benefit or prejudiced another. It is quite evident, from the allegations of the plea, that the purchaser at the sale relied upon the validity of the decree of sale and the deed executed by virtue of and conformably with the decree. It is not even hinted that the remaindermen acted in any way to induce the purchase. The plea discloses that the ages of the remaindermen at the date of the filing of the plea ranged from twenty-seven to thirty-five years. The plea was filed in the year 1902, and the sale occurred in 1876; so that the oldest of the plaintiffs was approximately nine years of age when the decree was entered. In a case where a trustee for two persons sells and conveys the whole property in fee, purporting to act as trustee for one only, and a part of the price or of the proceeds of the sale passes from the trustee to the beneficiary not named in the transaction, such beneficiary must refund the same to the purchaser, or to those holding under him as subsequent purchasers, before he will be allowed to recover the whole of his interest in

the trust estate so sold and conveyed. *Bazemore* v. *Davis*, 55 *Ga.* 504. Also, where a trustee for the life-tenant, who does not represent the remaindermen, sells and conveys the entire fee, and the remaindermen receive a part of the proceeds of the sale, they must refund the amount so received before they can recover the whole estate in remainder. *Luquire* v. *Lee*, 121 *Ga.* 636. In the case before us the life-tenant died in 1900, and suit was brought by the remaindermen fifteen months thereafter. Of course they can not hold the land conveyed to the trustee in ex-change for the land conveyed by him, and also recover the land which the trustee conveyed. Their action in suing for this land so soon after the life-tenant's death amounts to a disaffirmance and repudiation of the sale by Smith, trustee, to McWhorter. It is familiar doctrine that to bind one by a ratification of an il-legal or void act, it must be shown that he had full knowledge, at the time of the alleged ratification, of the facts which would make such act illegal and void; and the burden of proving rati-fication is upon the person asserting it. *DeVaughn* v. *McLeroy*, 82 *Ga.* 688 (4). The bare fact that the plaintiffs lived on the exchanged land as members of their father's family and were sup-ported by their father from the proceeds thereof would not amount to ratification of the sale. Their father owed them a support dur-ing their minority, and the acceptance, after majority, of their father's bounty would not be a ratification of an illegal and un-authorized sale of their land. Neither would their brief occu-pancy of the exchanged land after the accrual of their right to sue ratify the illegal sale, unless something else was done by them to indicate their adoption and approval of the sale under the decree. Nothing of this kind was alleged in the plea, and the court should have stricken the same on demurrer.

Inasmuch as the trial judge held contrary to some of the prin-ciples of law herein enunciated, a new trial is ordered.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*