## SEABOARD AIR-LINE RAILWAY CO. *v.* HOLLIDAY.

1. Where the plaintiff and the defendant in an action to recover land claim under a common grantor, and a valid deed from the common grantor to the plaintiff is prior in time to the deed from the common grantor to the defendant, and is duly recorded, the title of the plaintiff is superior to that of the defendant; and the court did not err in these circumstances in directing a verdict for the plaintiff, in the absence of some valid attack by the defendant upon such title of the plaintiff.

2. Adverse possession does not run against a remainderman while the life-tenant is in life.

(a) If two estates in the same property unite in the same person in his individual capacity, the lesser estate is merged in the greater.

(b) The coincidence of two independent estates, presently held by one and the same person or class of persons, is a necessary prerequisite to a merger; and no merger can take place until such identity of person and of present interest in point of fact exists.

(c) Whenever a greater and a lesser estate meet in one and the same person, without any intermediate estate, the lesser is sunk in the greater.

(d) The doctrine of merger of estates is designed primarily for the benefit of one who acquires an interest in property greater than he pos-

Ejectment, 19 C. J. p. 1064, n. 51.

Estates, 21 C. J. p. 975, n. 50; p. 996, n. 3, 14; p. 1033, n. 24; p. 1035, n. 40; p. 1036, n. 57; p. 1037, n. 70; p. 1038, n. 89.

Estoppel, 21 C. J. p. 1250, n. 82.

Executions, 23 C. J. p. 593, n. 40; p. 595, n. 96; p. 604, n. 59.

sessed in the first instance, and will not be held to apply against his will to his disadvantage.

(e) One estate can not be merged in another, unless both estates are owned by the same person in the same right,.

(f) In order for legal and equitable estates to merge, the estates must be coextensive and commensurate.

(g) Where M., the owner of a tract of land, conveyed to H. 'a one-ninth undivided interest in remainder therein, to take effect upon the death of the grantor, and where M. thereafter conveyed to W. by a deed which purported to convey the entire tract to secure a debt, the effect of said deed was to convey to W. only the life-estate of M. in the one-ninth undivided interest in remainder previously conveyed to H., and the eight-ninths undivided interest in the tract which remained in M. after the above conveyance to H.; and where M. thereafter conveyed by deed to H. and five other persons the entire tract, the effect of this deed was to convey to H. and the other grantees therein only the equity of redemption of M. under her deed to W. in and to the life-estate reserved under her deed to H., and the eight-ninths undivided interest which she had conveyed to W. to secure debt. In these circumstances there was no merger of H.'s legal estate in remainder, under her deed from M., and her undivided one-sixth interest in the equity of redemption in this tract remaining in M. after her conveyance to W., and acquired by H. and her cograntees under the conveyance from M. to them.

(h) There being no merger of H.'s legal estate in remainder, under her deed from M., and her one-sixth undivided interest in the equity of redemption in this land remaining in M. after her deed to W. to secure debt, and acquired by H. under the deed from M. to her and her five cograntees, prescription did not run against H. during the lifetime of M.; and W. and those claiming under him did not acquire a title by prescription to M.'s legal estate in remainder by virtue of possession held by them during the lifetime of M.

3. Where W. reduced his debt to judgment and had the execution issued thereon levied upon the land conveyed by M. to him to secure such debt, and where H. and her five cotenants under the deed from M. to them filed a claim to this land when so levied upon, setting up title under the deed from M. to them; and where the claimants afterwards voluntarily dismissed their claim, and the land was sold under the execution of W. and was bought in by him, H. is not estopped in these circumstances from asserting title to her one-ninth undivided interest in remainder under her deed from M., against W. and those claiming under him, she having done nothing else to induce W. to buy the tract embracing her said interest, or to entrap him.

4. Where the plaintiff relied for recovery upon legal title, and the defendant sought to defeat her legal title by an estoppel, the burden was upon the defendant to establish all the elements necessary to constitute the estoppel, including want of knowledge of the true title by the purchaser at the sheriff's sale, under whom the defendant claimed by mesne conveyances; and the defendant having failed to carry this burden by showing such want of knowledge of the true title in such purchaser, the

court did not err in directing a verdict in favor of the plaintiff, she having shown title to the premises in dispute superior to that of the defendant.

No. 6007. NOVEMBER 18, 1927.

Complaint for land. Before Judge Howard. Fulton superior court. March 26, 1927.

*Randolph, Parker & Fortson,* for plaintiff in error.

*Anderson, Rountree & Crenshaw* and *Granger Hansell,* contra.

HINES, J. 1. Mrs. Lula Holliday brought her action against the Seaboard Air-Line Railway Company, to recover a one-ninth undivided interest in three described parcels of land, which were parts of a larger described tract of 14 acres. Both parties claimed under Mrs. McMillan, a common grantor. She owned the larger tract. On June 24, 1892, Mrs. McMillan conveyed, by deed recorded on July 1, 1892, to Mrs. Holliday a one-ninth undivided interest in the larger tract, to take effect upon the death of the grantor. On September 20, 1894, Mrs. McMillan conveyed to one Wyatt the tract of fourteen acres, by deed to secure a debt, recorded September 22, 1894. The debt not having been paid, Wyatt brought suit and obtained judgment against Mrs. McMillan on November 21, 1895. On December 21, 1895, Wyatt, by quit-claim deed recorded on December 28, 1895, conveyed to Janie H. McMillan, with other property, the fourteen-acre tract for the purpose of levy and sale under his judgment. Thereafter the execution issued on said judgment was levied upon property embracing the fourteen-acre tract and the premises in dispute. After due advertisement the property was sold by the sheriff on the first Tuesday in January, 1901, and bought in by Wyatt, and the sheriff conveyed it to him. By mesne conveyances from Wyatt to Burton and from Burton to the defendant, the latter claims title to the lands embracing the premises in dispute.

As both the plaintiff and the defendant claim title under Mrs. McMillan as a common grantor, and as the deed from the common grantor to Mrs. Holliday is prior in date to the deed from Mrs. McMillan to Wyatt, under whom the defendant claims by mesne conveyances, Mrs. Holliday obtained a title superior to that of the defendant. This is so for the reason that where the plaintiff and defendant claim title from a common propositus, and that of the plaintiff is prior in time, and is not invalid for any of the

reasons assigned in the defendant's attack upon it, the direction of a verdict in favor of the plaintiff is proper. *Lee* v. *Pearson,* 138 *Ga.* 646 (75 S. E. 1051).

2. But it is insisted by the defendant that the evidence shows that it has a good title by prescription to the premises in dispute. The defendant and those under whom it claims had been in continuous, uninterrupted, open, and exclusive possession of the premises in dispute, under a claim of right, from January 1, 1901, until August 18, 1925, when the present suit was brought. In reply to this contention the plaintiff asserts that she acquired title to these premises as remainderman under the deed from Mrs. McMillan to her, and that in consequence she could not assert her title and recover possession of this land until the death of Mrs. McMillan, which took place only a few months prior to the bringing of this suit. It is now well settled that adverse possession does not run against a remainderman while the life-tenant lives. The life-tenant, or those claiming under her, being entitled to the possession of the property, no suit can be maintained therefor by the remainderman, and the defendant has no possession which could become adverse so as to ripen into a prescriptive title against the remainderman so long as the life-tenant lives. *Bull* v. *Walker,* 71 *Ga.* 195; *Bagley* v. *Kennedy,* 81 *Ga.* 721 (8 S. E. 742); *Lamar* v. *Pearre,* 82 *Ga.* 354 (9 S. E. 1043, 14 Am. St. R. 168); *Fleming* v. *Hughes,* 99 *Ga.* 444 (27 S. E. 791); *Luquire* v. *'Lee,* 121 *Ga.* 624 (49 S. E. 834); *Smith* v. *McWhorter,* 123 *Ga.* 287 (51 S. E. 474, 107 Am. St. R. 85); *Dixon* v. *Patterson,* 135 *Ga.* 183 (69 S. E. 21); *Price* v. *Gross,* 148 *Ga.* 137 (96 S. E. 4).

The defendant, while admitting the correctness of the principle of law just stated, claims that it is not applicable, for the reason that the remainder estate acquired by Mrs. Holliday under the deed from Mrs. McMillan of June 24, 1892, became merged in a subsequent greater estate acquired by Mrs. Holliday under a subsequent deed made by Mrs. McMillan. On January 30, 1896, Mrs. McMillan conveyed by warranty deed to Mrs Holliday, Archer H. McMillan, Janie A. McMillan, Nannie F. McMillan, Robert K. McMillan, and Bessie S. McMillan, with other property, said tract of fourteen acres. That deed recited that it was executed in consideration of the rights and equities of the grantees in the property thereby conveyed, and of ten dollars in hand paid. The

specific contention of the defendant is that the remainder estate acquired by Mrs. Holliday under the deed of June 24, 1892, from Mrs. McMillan, consisting of a one-ninth undivided interest in remainder in said tract of fourteen acres, was merged in the one-sixth undivided interest acquired by Mrs. Holliday in said tract of land under the above deed executed by Mrs. McMillan on January 30, 1896. This contention is not well taken. If two estates in the same property unite in the same person in his individual capacity, the lesser estate is merged in the greater. Civil Code (1910), § 3682. The coincidence of two independent estates, presently held by one and the same person or class of persons, is a necessary prerequisite to a merger; and no merger can take place until such identity of person and of present interest in point of fact exists. *Luquire* v. *Lee,* supra. Whenever a greater and a lesser estate meet in one and the same person, without any intermediate estate, the lesser is sunk in the greater. 21 C. J. 1033, § 233; Id. 1036. The doctrine of merger of estates is designed primarily for the benefit of one who acquires an interest in property greater than he possessed in the first instance, and will not be held to apply, against his will, to his disadvantage. *Knowles* v. *Lawton,* 18 *Ga.* 476 (63 Am. D. 290); *Luquire* v. *Lee,* supra. One estate can not be merged in another, unless both estates are owned by the same person in the same right. *Pool* v. *Morris,* 29 *Ga.* 374 (3) (74 Am. D. 68). In order for legal and equitable estates to merge, the "estates must be coextensive and commensurate." 10 R. C. L. 667, § 28. Fractional legal estates and fractional equitable estates can not merge where the fractions are not the same. An equitable undivided interest in an equity of redemption can not merge with the legal fee. Chase *v.* Van Meter, 140 Ind. 321 (39 N. E. 455). So a one-half undivided life-estate is not mergeable with a five-sixths remainder in fee. Johnson *v.* Johnson, 7 Allen, 196 (83 Am. D. 676); Donalds *v.* Plumb, 8 Conn. 447. Before there can be a merger of estates, the instrument alleged to convey the greater estate must convey an estate in the property in which the lesser estate exists, and must in fact convey in such property a greater estate than the lesser estate already carved therefrom.

No merger in this case took place, for a number of reasons. When Mrs. McMillan conveyed to Mrs. Holliday a one-ninth un-

divided interest in remainder in the tract of fourteen acres, the only estate left in her in this one-ninth undivided interest was a life-estate. She could not thereafter convey the remainder estate of Mrs. Holliday in this interest. Besides, she conveyed to Wyatt, by her deed to him to secure a debt (although it purported to convey the entire property), only her life-estate in this one-ninth undivided interest, and her eight-ninths undivided interests in the remainder of this tract. There can be no merger of the legal estate in remainder of Mrs. Holliday, under her deed of June 24, 1892, with the estate acquired under the deed of January 30, 1896, without disregarding and eliminating the life-estate conveyed to Wyatt in the premises in dispute, acquired by his deed from Mrs. McMillan. Furthermore, the estate acquired by the grantees in the deed of January 30, 1896, is only the equitable interest of Mrs. McMillan under her security deed to Wyatt. This is so because a person can convey no greater estate in property than he possesses at the time he conveys the same. So we are of the opinion, under the facts of this case, that there was no merger of the legal estate in remainder acquired by Mrs. Holliday under her deed of June 24, 1892, from Mrs. McMillan, and the equity acquired by her under the deed from Mrs. McMillan of January 30, 1896. It follows, therefore, that no prescription ran against Mrs. Holliday during the lifetime of Mrs. McMillan, and the defendant did not show a title by prescription to the premises in dispute.

3. It is next urged by counsel for the defendant that Mrs. Holliday is estopped from asserting her title to the premises in dispute. When Wyatt reduced his debt to judgment, and had the execution issuing on his judgment levied upon the lands conveyed by Mrs. McMillan to him to secure his debt, Mrs. Holliday and the other grantees in the deed of January 30, 1896, interposed their claim to the fourteen-acre tract above referred to. On November 22, 1900, this claim was voluntarily dismissed by the claimants, and the tract so levied upon and claimed was sold by the sheriff on the first Tuesday in January, 1901. By reason of these facts the defendant insists that Mrs. Holliday is now estopped from asserting her title to the premises in dispute, the same constituting, as we have seen, a part of said fourteen-acre tract so levied upon and claimed. Our claim laws are cumulative, per-

missive and not mandatory. They do not take from the owners of land their right to assert their title by ejectment; and a sale by the sheriff can not divest the owner of his title, unless he does, or omits to do, something and thereby entraps the purchaser. *Whittington* v. *Wright,* 9 *Ga.* 23 (3) ; *Cox* v. *Griffin,* 17 *Ga.* 249 ; *McLennan* v. *Graham,* 106 *Ga.* 211 (32 S. E. 118). The failure to file a claim to land which has been levied on will not estop the true owner from asserting his title thereto by an action of eject-ment against the purchaser at the sale under an execution, where the owner has done nothing that had a tendency to mislead the purchaser as to the owner's relation to the property or the title. *Lawless* v. *Orr,* 122 *Ga.* 276 (50 S. E. 85). Withdrawing a claim to land levied on and permitting the sale to take place under an execution which has been levied thereon does not estop the claim-ant from afterwards asserting his title to the property so levied on and sold, where the claimant does nothing else to induce the purchaser to buy or to entrap him. *Denton* v. *Hannah,* 12 *Ga. App.* 494 (77 S. E. 672). 23 C. J. 595 [§ 523], 12. The filing of such claim is notice at least to the plaintiff in execution that the claimant claims title to the land levied upon; and the withdrawal of such claim by the claimant and the sale of the property under execution thereafter will not estop the claimant, whose title to the land is evidenced by duly recorded deed. Where the estoppel relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowl-edge or equal means of obtaining the truth, there is no estoppel. Civil Code (1910), § 5737. The plaintiff having shown by her proof that she had the legal title to the premises in dispute and was entitled to recover, and there being nothing in the evidence showing or tending to show that the defendant or any of its predecessors in title were ignorant of the true title when they purchased, the evidence failed to establish any estoppel which would preclude the plaintiff from asserting and recovering on her legal title.

4. It is next insisted by counsel for the defendant that the court erred in directing a verdict for the plaintiff, under the evidence bearing upon the subject of the estoppel pleaded by the

defendant, for the reason that it was for the jury and not for the judge to determine whether the facts constituted an estoppel. In support of this contention counsel for the defendant rely upon the case of *Tune* v. *Beeland,* 131 *Ga.* 528 (62 S. E. 976). In that case (an ejectment suit) the plaintiff relied on the defendant's conduct in aid of his title. Unless the plaintiff could show that the defendant was estopped by his conduct from asserting his title to the land involved, he could not recover. Whether the defendant in that case was estopped depended upon an inference to be drawn from given facts. The court directed a verdict in favor of the plaintiff, and this court properly held that whether an inference of estoppel could be drawn from the facts proved was a question for the jury and not for the judge. In the case at bar the plaintiff relied upon legal title, and the defendant sought to defeat her legal title by an estoppel. The defendant having failed to show that it or any of its predecessors were ignorant of the true title, the burden being upon the defendant to establish the defense of estoppel, the court properly directed a verdict against the defendant upon its contention that the plaintiff was estopped.

*Judgment affirmed. All the Justices concur.*