In the Matter of GREEN RIVERS
FOREST, INC., Debtor.

**GREEN RIVERS FOREST,
INC., Plaintiff,**

v.

**AETNA LIFE INSURANCE
COMPANY, Defendant.**

Bankruptcy No. 93–53837.
Adv. No. 96–5047.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Oct. 7, 1996.

Wesley J. Boyer, Brown, Katz, Flatau & Hasty, Macon, GA, for Debtor.

S. Perry Thomas, Sutherland, Asbill & Brennan, Atlanta, GA, for Aetna Life Insurance Company.

## AMENDED MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter is before the Court on Motion for Summary Judgment by Defendant, Aetna Life Insurance Company ("Aetna"), and Motion for Partial Summary Judgment by Plaintiff, Green Rives Forest, Inc. ("GRF"). In this action, GRF wants the Court to recognize its leasehold rights in two tracts of land which were previously leased to GRF by Aetna's predecessor in title as part of a leasehold interest totaling 33,000 acres. One tract in dispute contains 887 acres and the other contains 3056 acres. GRF alleges errors in the foreclosure of the two tracts in question. GRF has made no allegations with respect to any of the other leasehold acreage foreclosed by Aetna.

Prior to this adversary proceeding, this Court granted a Motion For Relief From Stay to Aetna in case number 93–53837. That order was entered on October 16, 1995. On February 6, 1996, pursuant to a power of sale contained in a Deed to Secure Debt ("Security Deed"),[1] Aetna conducted a foreclosure sale for which it properly advertised all of the acreage which remained subject to the original lease except for the 887–acre tract.[2] Aetna was the highest bidder at the sale. The amount and propriety of that bid is not at issue. Subsequent to the sale, Aetna recorded the deed (the "February Deed") with the Clerk of the Superior Court of Meriwether County (the "Clerk"). The 3056–acre tract in question, although properly advertised as part of the foreclosure sale, was not described in the February Deed. The parties disagree over the reason for that omission. GRF contends that it was an oversight by Aetna, while Aetna claims that the deed contained a description of the 3056–acre tract when recorded, and that an error by the Clerk's office caused the omission. Citing authority under section 44–2–12 of the Official Code of Georgia Annotated ("O.C.G.A."),[3] Aetna attempted to rerecord the deed so that all property descriptions were included. The Clerk's office denies any error on their part. GRF contends that the omission of the description of this 3056–acre tract from the deed as recorded results in an abandonment of Aetna's rights as to those acres omitted from the description.

---

1. The Security Deed was issued in favor of Aetna to secure a $8,200,000 loan by Aetna to GRF.

2. As of the bankruptcy petition date, only 16,802 acres remained subject to a Security Deed issued in favor of Aetna. Prior to that time substantial tracts of the original 33,000 acres of timber were released from the Security Deed.

3. Section 44–2–12 states the following:

When the record of any deed or other recorded instrument or the certificate of record is lost or destroyed, the clerk of the superior court may rerecord the instrument and the certificate of record. The rerecording shall be as valid as the original recording and shall take effect from the date of the original recording, provided the rerecording is within 12 months after the loss or destruction of the original recording.

On May 7, 1996, Aetna conducted another foreclosure sale for the 887–acre tract not previously advertised. GRF contends that Aetna had abandoned its interest in those acres and that the second foreclosure is therefore wrongful.

### Summary Judgment

Summary judgment is appropriate when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c)[4]; *Combs v. King,* 764 F.2d 818 (11th Cir.1985). If there is a genuine issue of fact in dispute, summary judgment must be denied. *Warrior Tombigbee Transportation Co., Inc. v. M/V Nan Fung,* 695 F.2d 1294 (11th Cir. 1983). The party seeking summary judgment may do so by showing that an essential element of the non-movant's case is lacking. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then come forward with sufficient proof to establish the existence of an essential element of its claim. If it cannot, summary judgment is appropriate. *Id.* at 322–323, 106 S.Ct. at 2552–2553.

### The 3056–acre tract

■ The 3056–acre tract of land was described in the advertisement for the February foreclosure sale. For some reason which is unknown at this time, the deed which was recorded by the Clerk, the February Deed, did not contain a description of this property. Aetna contends that an error by the Clerk was the cause of the omission. GRF asserts that Aetna recorded a deed which did not contain a description of the 3056–acre tract.

If this Court is to decide the proper status of this tract of land on motion for summary judgment, there must be no dispute as to any material fact. F.R.Civ.P. 56(c). Here, there is complete disagreement as to the cause of the omission of the description of the 3056–tract from the February Deed. However, as will be shown in the analysis which follows,

this fact is not material to the determination of the question. In addition, for the purposes of deciding this issue, there are no other material facts in dispute. Therefore, the Court will now decide the question as a matter of law.

Essentially, Aetna sought to "fix" the February Deed so that it would contain the description of the 3056–acre tract. Aetna contends that the problem was remedied by "rerecording" the deed on March 6, 1996 (the "March Deed") with the proper description.[5] GRF contends that the March Deed does not "fix" the February Deed because the Georgia Code does not permit such a rerecording. Specifically, GRF claims that O.C.G.A. § 44–2–12 entitled "Rerecording lost or destroyed deeds and other instruments; validity," is the only Georgia Code section permitting a deed to be rerecorded, and that Aetna's situation does not fall within its provisions. Aetna asserts that the alleged error by the Clerk would allow them to rerecord under this section.

We are faced then, with the question of whether the March Deed had the effect Aetna intended. The Court holds that the recording of the March Deed properly gives notice of Aetna's fee simple interest in the 3056–acre tract. However, the authority for such a holding is not founded in O.C.G.A. § 44–2–12. Without reaching the question of whether or not there was error or whether the error was the fault of the Clerk, the Court holds that the March Deed can, at a minimum, be properly characterized as a "corrective deed."

> The customary mode of correcting an error in a deed is for the grantor to execute and deliver to the grantee a corrective deed which is accepted as such by the grantee [footnote omitted].... A corrective deed is valid without any new consideration, and acceptance by the grantee constitutes an admission of the incorrectness of the original deed [footnote omitted].

4. Rule 56 is made applicable by Federal Rule of Bankruptcy Procedure 7056.

5. According to the evidence before the Court, an additional deed was recorded on April 8, 1996 in

order to "correct certain typographical errors" in the March Deed. (Complaint and Answer ¶ 16.)

George A. Pindar & Georgine S. Pindar, *Georgia Real Estate Law and Procedure* § 19–108, at 163 (4th ed.) (1993).

> In all cases where the form of the deed is contrary to the intention of the parties, equity will interfere to make it conform thereto [footnote omitted]. The relief granted does not depend upon how the error originated, [footnote omitted] nor will it be defeated by the negligence of the complaining party if the other party has not been prejudiced [footnote omitted].... The basis of reformation is the proven intention of the parties at the time of delivery of the deed.... Reformation will not be decreed against a purchaser for value without notice....[6]

*Id.* § 19–113, at 165.

Here, although the grantor and grantee are the same entity,[7] absent any allegations of misconduct with respect to the foreclosure sale, there is no basis for deviating from the well established rules outlined by Pindar.

The February Deed did not properly reflect the intention of the parties to the February foreclosure sale.[8] The March Deed properly corrected the omission of the 3056–acre tract, regardless of where the fault occurred for the original omission. Without any allegations of wrongdoing with respect to the foreclosure sale, the fact that Aetna was both the foreclosing party and the purchaser at that sale will not alter the validity of the deed. Accordingly, Aetna's March Deed can properly be considered a corrective deed.

█ In recognizing the March Deed as a corrective deed rather than reaching the question of whether or not the deed can be considered a rerecording, the Court recognizes the practical implications, although considers them to be of no consequence in this matter. The effective date of a rerecording is deemed to be the date of the original deed recording. O.C.G.A. § 44–2–12. The effective date of a corrective deed, however, is the date of the filing of that corrective deed, as there is no date-back feature.[9] This distinc-

---

**6.** Pindar makes reference to several Georgia Code sections as support for the principle that reformation of the deed should be permitted in equity. For example, O.C.G.A. § 23–2–25 states that "[i]f the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto." Likewise relevant is O.C.G.A. § 23–2–32(b) which states that "[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." Here, the intention of the parties was clearly that the February Deed should include the 3056–acre tract. The advertisement for the sale indicated that intention. Thus, O.C.G.A. § 23–2–25 would allow the March Deed to correct this omission. In addition, since it was both the foreclosing party and the highest bidder at the sale, Aetna would be considered the "other party" as contemplated by O.C.G.A. § 23–2–32(b). It follows that, since Aetna (the "other party") was certainly not prejudiced by its own action to remedy an omission from the February Deed, allowing the March Deed to be considered a corrective deed is in compliance with O.C.G.A. § 23–2–32. Even if there were a way to consider GRF the "other party" within the meaning of O.C.G.A. § 23–2–32, there is no evidence of any prejudice to them. Presumably, the price paid at foreclosure included consideration for the 3056–acre tract which both parties intended to be included in the sale. Therefore, GRF was is not prejudiced by a ruling that the March Deed is to be considered a corrective deed. To hold otherwise would provide a windfall to GRF by allowing it to retain property for which it has already received compensation via proceeds from the foreclosure sale applied towards GRF's debt owed to Aetna.

**7.** The Court understands that their may be some dispute over whether Aetna can properly be characterized as both grantor and grantee in the February foreclosure sale. For example, there may be a way to characterize GRF as the grantor in the sale (since their property interest was being foreclosed upon). Even if GRF is considered to be the grantor in the foreclosure sale, there is no evidence that their intention with respect to the sale would have been any different than that of Aetna. In fact, in their pleadings, GRF admits the intention that the 3056–acre tract be included in the sale by asserting that its inclusion in the advertisement and its omission from the February Deed should cause Aetna to have abandoned their interest in that tract.

**8.** *See supra* footnote 7.

**9.** O.C.G.A. § 44–2–3 states that "[e]very unrecorded deed or conveyance of land made by any person shall be void as against subsequent bona fide purchasers for value without notice of such voluntary deed or conveyance...." While O.C.G.A. § 44–2–12 provides specific statutory authorization for rerecorded deeds to have a date-back feature, no comparable authority exists for corrective deeds.

tion should be one of no consequence here since, there is no allegation that any other party has made an intervening claim on the subject property.[10]

■ In their briefs, the parties make reference to several cases and statutes relevant to the question of whether multiple foreclosures are permitted with respect to a particular parcel of property. The general rule in Georgia is that "there can be but one foreclosure of a mortgage." *Strickland v. Lowry Nat'l Bank,* 140 Ga. 653, 654, 79 S.E. 539 (1913). However, in equity, there are exceptions. *Irons v. American Nat'l Bank,* 178 Ga. 160, 160, 172 S.E. 629 (1933). Whether or not this situation falls within one of these exceptions is not a question which need be addressed in order to decide the issue as to the 3056–acre tract. This line of analysis is not on point. Aetna did not, by recording the March Deed, engage in a second foreclosure sale. The recording of this corrective deed was a purely ministerial act intended to add a description of property which had already been foreclosed upon in February. Therefore, it is fruitless to pursue an analysis of the relevant law in this area.[11]

### The 887–acre tract

■ The proper disposition of the 887–acre tract of land in question can also be decided on motion for summary judgment as there are no disputed material facts which are necessary to determine the issue. Ac-

cordingly, the Court will now decide the question as a matter of law.

The analysis with respect to the 887–acre tract is necessarily different than that for the 3056–acre tract because, unlike the 3056 acres, the 887 acres was not described in the advertisement for the February foreclosure sale. Accordingly, the March Deed did not include a description of the property either. Instead, Aetna foreclosed upon the 887 acres in a separate foreclosure sale on May 7, 1996. GRF complains that Aetna abandoned its interest in the tract by not including it in the May sale and, therefore seeks damages for wrongful foreclosure.

■ In Georgia, "[p]owers of sale ... shall be strictly construed and shall be fairly exercised." O.C.G.A. § 23–2–114. Powers of sale contained in a deed to secure debt are matters of contract, and, therefore, they will be enforced as written. *Plainville Brick Co. v. Williams,* 170 Ga. 75, 152 S.E. 85 (1930).

The heart of this matter lies in the power of sale language contained in the Security Deed. GRF and Aetna disagree over the meaning of this language. GRF contends that the language only allows one foreclosure sale for all of the acres for which it was granted a leasehold by Aetna. Aetna urges that the language plainly allows for multiple foreclosures. Both parties cite paragraphs

---

**10.** In its pleadings, GRF argues that Aetna should be deemed to have abandoned its interest in the 3056 acres because a good faith purchaser for value could have relied, to his or her detriment, upon the deed as originally recorded in February. There is no evidence before the Court of the existence of such a bona fide purchaser. This analysis should not be altered for the benefit of a bona fide purchaser who only exists hypothetically.

**11.** GRF contends that second foreclosures are not permitted because when property is foreclosed upon a merger of the estates in interest takes place. O.C.G.A. § 44–6–2 ("If two estates in the same property shall unite in the same person in his individual capacity, the lesser estate shall be merged into the greater."). The doctrine of merger does not provide support for GRF's position. Georgia case law is clear that, in equity, there are exceptions to the rule set out in

O.C.G.A. § 44–6–2. One such exception occurs when the person in whom the two estates meet did not intend for a merger to take place. *See, e.g., Fraser v. Martin,* 195 Ga. 683, 687, 25 S.E.2d 307, 310 (1943). Here, the evidence before the Court suggests that Aetna did not intend for the estates to merge in a way that would cause it to abandon of the 3056–acre tract. Besides, to allow such a result would be inequitable since GRF would receive a windfall in the form of a leasehold in property for which Aetna had already provided consideration in the February foreclosure sale. The doctrine of merger is not permitted to create such a result. *Id.* ("Whenever a merger will operate inequitably, it will be prevented."). Furthermore, "[t]he doctrine of merger of estates is designed primarily for the benefit of one who acquires an interest in property greater than he possessed in the first instance, and will not be held to apply, against his will, to his disadvantage." *Seaboard Air–Line Ry. v. Holliday,* 165 Ga. 200, 140 S.E. 507 (1927).

4.02 [12] and 4.06 [13] of the Security Deed as support for their positions.

GRF argues that because paragraph 4.02 only refers to "power of sale" and "auction" in the singular, multiple sales should not permitted. (Brief in Support of Plaintiff's Motion for Partial Summary Judgment at 7–8.) In addition, GRF cites paragraph 4.06 of the Security Deed as support for their contention that the deed authorizes only one foreclosure sale. Specifically, GRF contends that "[s]ection 4.06 again refers to a sale in the singular, and simply permits the grantee to sell the property in multiple parcels, or as a whole, *in a single sale proceeding.*" *Id.* at 8 (emphasis added).

Aetna, on the other hand, cites the same paragraphs in support of its assertion that the language permits multiple exercises of the power of sale. Aetna notes the language of paragraph 4.06 which states that "one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full." (Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 8.)

The dispute here centers on the power of sale language. The Court concludes that multiple sales are, in fact, authorized by the provisions therein. Paragraph 4.06 clearly contemplates multiple sales by stating that "one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full." The entire premises were not sold after the February foreclosure sale. Furthermore, there is no dispute that the secured indebtedness was not paid in full. Therefore, Aetna's power of sale had not extinguished, and the May foreclosure sale for the 887 acres was permitted.

The Court is unconvinced by GRF's argument that paragraph 4.02 in the Security Deed contemplates only one foreclosure sale simply because it speaks of "power of sale" and "auction" in the singular. Paragraph 4.06 clearly permits multiple foreclosure sales. The mere fact that paragraph 4.02 speaks in the singular as to those sales does not contradict that conclusion. Rather, paragraph 4.02 has a supplemental purpose. It governs the procedures to be followed in conjunction with a particular foreclosure sale, of which there may be more than one as authorized by paragraph 4.06. Accordingly, Aetna's May foreclosure sale was permitted by the language of the power of sale contained in the Security Deed. Therefore, GRF is not entitled to damages for wrongful foreclosure with respect to the May sale of the 887–acre tract.

---

12. In relevant part, ¶ 4.02 states the following:

(b) [The Grantee] [m]ay sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks in a newspaper in which sheriff's advertisements are published in said county, all other notices being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns agent and attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns . . . shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, courtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale. . . .

13. In relevant part, ¶ 4.06 states the following:
In case of any sale under the Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, at the election of the Grantee, the Premises or any part thereof may be sold in one parcel and as an entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full.

In another argument, GRF urges that Aetna should be bound by the recitals in the February deed which stated that Exhibit "A" described all of the property subject to the Security Deed. In addition, GRF states that Georgia law provides that when a deed is accepted, the recitals contained therein are conclusive upon the accepting party. O.C.G.A. § 44–5–39 (Michie 1996). We know that the February Deed, in fact, did not contain all of the property under the Security Deed. If it had, this adversary proceeding would not have been filed. Aetna is bound by the recitals in the February Deed, but GRF has no standing to have it both ways.

These provisions are intended to resolve disputes between competing claimants. It would be absurd for their application to dictate a forfeiture by Aetna and resulting windfall to GRF. GRF cannot say, on one hand, that Aetna should be bound by the fact that the February deed supposedly contains all property that was contained in the Security Deed, but that, on the other hand, the deed does not contain the description of the 887–acre tract, so Aetna has abandoned its interest in that tract.

The result might be different if this argument were being urged by a good faith purchaser for value without notice who had relied upon the recital that the February Deed contained all the property subject to the Security Deed. Although, even in such a situation, the purchaser may not be without notice since careful inspection of the records would reveal the discrepancy. In any event, there is no evidence of harm to a bona fide purchaser here. Therefore, this Court finds this argument by GRF to be without merit.

*Related Issues*

There are a number of related issues that were brought before this Court on motion. Those matters will now be decided.

1. *Disqualification of Attorney/Striking of Affidavit*

■ In addition to the relief sought as to the 3056–acre and 887–acre tracts, GRF makes two supplemental claims. First, GRF contends that Aetna's attorney, J. Patton Hyman, will have to testify regarding the issue of alleged error by the Clerk, and, therefore, that his law firm, Sutherland, Asbill & Brennan, should be disqualified as attorneys for Aetna. Second, GRF urges this Court to strike Mr. Hyman's affidavit (filed on May 30, 1996) regarding alleged error.

It is unnecessary to decide the question of whether the Clerk or Aetna was to blame for the omission of the description of the 3056–acre tract. Accordingly, there was no need to consider the Hyman affidavit and there will be no reason for Mr. Hyman to testify regarding that subject matter. Therefore, there is no reason to strike the affidavit or disqualify Sutherland, Asbill & Brennan as attorneys for Aetna.

2. *Aetna's Counterclaim*

In their pleadings, Aetna has requested that the Court find GRF's claims in this adversary proceeding to be frivolous and unwarranted. Along those lines, Aetna requests that sanctions be imposed on GRF's attorneys under the authority of Federal Rule of Bankruptcy Procedure 9011.

Given the complex and often confusing issues in this area of the law, it is not hard to understand how GRF would believe that they had a legitimate claim. In fact, Debtor's counsel may have been bound to pursue this claim in the diligent exercise of his duty. The lack of any direct statutory or case authority on the subject is ample proof of the viability of GRF's claim.

3. *Aetna's Motion to Expedite Oral Hearing*

Given that the Court has issued a ruling in this case at the summary judgment level, there is no reason to have any further hearings. Therefore, Aetna's motion for an expedited hearing, being unnecessary, is denied.

*Conclusion*

Aetna did not abandon its rights with respect to the 3056–acre tract in question. The corrective deed filed in March sufficed to memorialize the fact that the tract was advertised and foreclosed upon at the February sale. Aetna did not abandon its interest with respect to the 887–acre tract in question. Even though that tract was not advertised or foreclosed upon at the February sale, it was

properly foreclosed upon at the May sale. The power of sale contained in the Security Deed specifically authorizes foreclosure of the subject premises in part or in whole. Therefore, GRF is not entitled to any damages for wrongful foreclosure with respect to the May sale of the 887 acres. This order does not address how these conclusions would affect the rights of a bona fide purchaser who relied upon the real estate records before the recording of the March Deed or the deed corresponding to the May foreclosure sale of the 887–acre tract.

An order will be entered in accordance with this opinion.

## ORDER

In the Court's Memorandum Opinion dated September 30, 1996, reference was made on page 21 to the conduct by Aetna's counsel in a prior proceeding. The Court notes as a matter of clarification that the law firm representing Aetna in this case is a different firm from the one that represented Aetna in the prior referenced proceeding. The Court erred in asserting otherwise.

While the contention of Aetna's counsel in this case as to the application of Federal Rule of Bankruptcy Procedure 9011 is groundless, this appears to be the first such contention by this counsel in behalf of Aetna in this case. Therefore it appears that the Court's previous conclusions as to the failure of counsel to embrace the "spirit of civility urged" in the Court's previous order do not appear to be appropriate. The Court apologizes to counsel for any suggestion to the contrary.

An amended memorandum opinion will be issued this date deleting the Court's incorrect reference. The Court's order entered September 30, 1996 continues in full force and effect.